## EASTHOPE v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4854.   Decided October 19, 1932.   (15 P. [2d] 301.)

*Macfarlane & Cornwall,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Attorney General, and *Geo. H. Smith, R. B. Porter* and *W. Hal Farr,* all of Salt Lake City, for defendants.

EPHRAIM HANSON, J.

This is a proceeding to review an order of the Industrial Commission of Utah denying plaintiff compensation for in-

juries which he claims to have received in the course of his employment with the Salt Lake Ice Company. Plaintiff contends that the evidence received at the hearing before the commission was such as to require an award of compensation. Defendants contend to the contrary. No other question is presented for determination.

During the summer of 1928 plaintiff was in the employ of the Salt Lake Ice Company, an employer of labor subject to the provisions of the Industrial Act (Comp. Laws 1917, § 3061 et seq., as amended). Plaintiff testified that on July 31st of that year he wrenched his back while tipping from its end to its side a block of ice weighing about 400 pounds; that as he was in the act of lowering the block of ice onto its side, the bottom of the ice block slipped, causing the injury complained of; that he experienced some pain in his back at that time; that he continued to work on the ice wagon for three or four days thereafter, but during that time he did not attempt to lift any blocks of ice weighing more than 50 pounds; that in the course of three or four days after such event the ice company put him to work on a garbage wagon; that he continued to work on the garbage wagon for about two weeks or until August 20th; that during the time he worked on the garbage wagon he did not do any heavy lifting; that for the most part he drove the team; that he did empty some light garbage cans into the wagon; that about two or three days after the accident the fingers of one of his hands became numb; that in the course of a few days pain developed in one of his legs and the pain in his back became less severe; that the pain in his leg grew progressively worse until finally he could not stand or walk on the leg; that about three weeks after the accident he was compelled to quit work and go to bed.

A day or two after plaintiff was confined to his bed, he called in Dr. David Andrew. In the course of a few days plaintiff was removed to the hospital, where he remained for five weeks. While at the hospital an extension was ap-

plied to plaintiff, and preparatory to being removed therefrom he was placed in a plaster cast. Plaintiff's wife testified that on the night of July 31, 1928, her husband told her that he had injured his back on that day; that on that night she bound him up with bandages but it did not seem to do any good. Henry Walk, the barn foreman, testified that plaintiff told him that he had injured his back. Mr. Walk could not definitely fix the date when plaintiff made the complaint. Mr. Walk further testified that on the night of the last day that plaintiff worked he was scarcely able to walk. Plaintiff's son also testified that his father had difficulty walking home on the evening of the last day he worked for the ice company.

Dr. Andrew testified that he treated plaintiff from the time he was first called in up to the date of the hearing before the commission; that an X-ray of Easthope's back was taken by Mr. Thody; that the X-ray showed a compression fracture of the ninth dorsal vertebra; that there was no question that plaintiff's back was injured; that the injury was probably of recent origin, possibly several weeks; that when the extension was applied to plaintiff at the hospital he was given immediate relief in his leg but not in his hand; that plaintiff's leg continued to improve so long as the extension was applied; that when the cast was placed on plaintiff he was able to get on his feet, but when he got out of bed he did not get along quite so well; that he should have been kept in bed with the extension. Dr. Andrew expressed it as his opinion that plaintiff's condition was the result of an injury; that he was suffering from Kuemmell's disease or traumatic spondylitis; that taking into consideration the history of the case, the fact that the extension applied to plaintiff gave him immediate relief, and the condition of his vertebra as shown by the X-ray indicated, in Dr. Andrew's opinion, that plaintiff's condition was probably brought about by an injury which he received at the time he testified that he injured his back.

Drs. Martin C. Lindem and L. N. Ossman were also called and testified as expert witnesses. They examined the X-ray pictures of plaintiff's back. They testified that the condition of the vertebra shown by the X-rays could not, in their opinion, be the result of a recent injury; that the condition of plaintiff's back was probably caused by a disease and not by an injury; that the formation of the bone bridges and the reconstruction of the flattened vertebra as shown by the X-rays would have taken more than eighteen months to form; that the condition of plaintiff's back may be due to an injury, but there were so many vertebrae involved that in all probability it was due to a disease of ten, eleven, or twelve years' standing; that the condition of plaintiff's back might give him pain in his leg, but it could not give him pain in his fingers; that a very violent lifting or twisting of his body might aggravate the condition of plaintiff's back and cause a disability, but such disability would begin immediately and would be accompanied by very severe pain; that the X-ray pictures did not show any evidence of a recent injury.

It will readily be observed that there is a substantial conflict in the testimony as to whether plaintiff's disability is the result of the alleged accident or whether it is due solely to a disease of many years' standing. Under such circumstances this court may not interfere with the findings made by the commission. By a long line of decisions this court has so held, and such are the provisions of Laws Utah 1919, chap. 63, § 3148, pages 164, 165.

The order denying compensation is affirmed.

CHERRY, C. J., and STRAUP, and ELIAS HANSEN, JJ., concur.