## VECCHIO et al v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5539.  Decided November 19, 1934.  (37 P. [2d] 542.)

*O. K. Clay*, of Salt Lake City, for plaintiffs.

*Joseph Chez, Atty. Gen.*, and *Marl D. Gibson*, of Price, for defendants.

ELIAS HANSEN, Justice.

This is the second time this cause has been before us for review. On the former review this court disapproved the following findings theretofore made by the Commission:

"I. That on November 4th, 1931, deceased, Guy Vecchio died from acute general streptococcic septicemia, induced from a minute abrasion over anterior mid-tibial region of right leg, or from a focal infection of his throat, tonsils or gall bladder.

"II. The Commission further finds that the cause of the minute abrasion over anterior mid-tibial region of the right leg is not disclosed by the record, as there is no competent evidence to prove that the deceased, Guy Vecchio, sustained said abrasion while in the dis-

charge of his duties as an employee of the defendant Independent Coal & Coke Company."

The first finding above quoted was disapproved because it is ambiguous, indefinite, and uncertain, and also because there was no evidence that the general streptococcic septicemia from which deceased died was induced from a focal infection of his throat, tonsils, or gall bladder.

The second finding was disapproved because there was competent evidence tending to show that the deceased sustained an injury while in the employ of the defendant Independent Coal & Coke Company which injury might have caused the minute abrasion over the anterior mid-tibial region of his right leg. 82 U. 128, 22 P. (2d) 212.

After the cause was remanded to the Commission, a further hearing was had. The evidence offered at the first hearing together with additional evidence was offered and received. Upon the evidence received at the second hearing the Commission found:

"I. That on November 4th, 1931, deceased, Guy Vecchio died from acute general streptococcic septicemia, induced from a minute abrasion over anterior mid-tibial region of the right leg.

"II. The Commission further finds that the minute abrasion, above mentioned, and from which acute general streptococcic septicemia resulted, was not received by the decedent, Guy Vecchio, by reason of an accident arising out of or in the course of his employment by the Independent Coal and Coke Company."

Plaintiff has again brought the cause here for review. The grounds of her complaint relate to the second finding above quoted. She contends that the second finding is contrary to the law as announced by this court in its former opinion, and that the evidence offered and received before the Commission at the second hearing was such as to require, as a matter of law, a finding that the minute abrasion from which septicemia resulted was received by the deceased in the course of his employment by the Independent Coal & Coke Company. Nothing was said or decided by this court

in its former opinion that justifies the claim that the evidence then before us for review was such as to require a finding that the deceased received the minute abrasion in question while working for the Independent Coal & Coke Company. There is a vast difference between the nature of evidence which in law is sufficient to support a finding, and evidence which, as a matter of law, requires a particular finding. All that was decided by the former opinion was that there was competent evidence tending to show that the deceased received the minute abrasion in question while working in the mine of the Independent Coal & Coke Company and that the Commission was in error in finding otherwise.

The evidence received at the first hearing is set out somewhat in detail in the former opinion. The additional evidence offered at the second hearing is, in the main, but a repetition of the evidence offered and received at the first hearing. A brief summary of the evidence will serve our purpose on the present review.

On October 19, 1931, Virgil Bullock, Lester Blackham, and the deceased were working in the coal mine of the Independent Coal & Coke Company. Mr. Bullock testified that on the afternoon of that day, while he was turning a water tap in the mine, he heard the deceased mumbling something; that as he looked around he saw the deceased in a crouched position, and asked him what was wrong; that deceased replied, "I have hurt my leg" or "legs." Mr. Bullock further testified that he did not observe the deceased limp or otherwise show evidences of having been injured. Lester Blackham testified that he was working with the deceased on the day in question; that he did not hear him complain of being hurt, and so far as he observed the deceased showed no evidences of having been injured. George B. Jackson testified that at the time in question he was foreman of the Independent Coal & Coke Company; that neither the deceased nor any one else reported to him that

the deceased had received an injury while working in the mine. On October 22d, three days after the alleged injury, Mr. Vecchio complained of weakness, chills, fever, and headache. Dr. R. W. Robinson was called in and treated Mr. Vecchio for what the doctor then believed was an acute cold. On the day following, Dr. Robinson again called on Mr. Vecchio, who then complained of a pain in his right leg. The doctor examined the leg and found "a minute abrasion very much like a small scratch midway between the ankle and the knee." When the doctor discovered the scratch, he said: "Guy you have got a little scratch." And he replied: "I was not aware of it Doctor." "I said 'Guy I think this is the cause of your fever; you have a small scratch and there is a little infection around it.' I said 'Do you recall injuring the foot?' He said 'No, doctor, I don't recall an injury of the foot, although it may have happened somewhere in the mine.' "

Dr. J. C. Hubbard was called into consultation by Dr. Robinson. He testified that he examined Guy Vecchio and inquired from him how he received the injury in question. Dr. Hubbard described the injury as being "of a minor nature, a small scratch, with no contusion, no laceration, no ecchymosis, no swelling where the scratch was." That upon inquiry by Dr. Hubbard of Mr. Vecchio as to how he received the injury in question, he replied that "he didn't know." Dr. F. F. Fisk also examined Vecchio a few days after the alleged injury. He thus describes the injury:

"My recollection is that it was such an insignificant scratch that it was not apparent that it was a bruise or anything of the kind. A light scratch or a pin scratch. I was scarcely able to recognize it at that time. The doctor had opened it in several places and drained it, and my recollection is that there was no apparent foci of infection of any consequence or any extent visible at the time I saw him."

Mrs. Vecchio, the mother of the deceased, and Virgil Bullock, both testified that Guy Vecchio, some time after the alleged injury, told them that he received the injury to his leg while in the mine of the defendant company while

attempting to jump on a car and bumping his leg against the motor thereon. There is evidence which tends to show that there was a motor on a mine car which was standing near where the deceased was working at the time it is claimed he received the injury here in question; that such motor was elevated about two and one-half feet above the ground.

The foregoing is substantially all of the evidence touching the question of where, how, and when the deceased received the minor abrasion which the Commission found was the source of the septicemia from which Guy Vecchio died. While there is competent evidence, as held by this court on the former review, tending to show that the deceased received the injury in question while working in the mine of the defendant, there is also considerable evidence tending to show the contrary. The Commission may well have believed that it was improbable that the injury in question was received by the deceased bumping his leg against the motor of the car as claimed by plaintiff. The nature of the injury, the statements of Mr. Vecchio to the doctors after he was injured, the position of the motor on the car, all tend to rebut plaintiff's claim in such respect. By a long line of decisions this court has uniformly held they will not disapprove findings made by the Commission on conflicting evidence. That this court is without authority in such case to interfere with the Commission's finding is expressly provided by our Industrial Act, Rev. St. Utah 1933, 42-1-79.

The order denying compensation is affirmed.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFATT, JJ., concur.