OVERMAN et al. v. INDUSTRIAL COMMISSION et al.

No. 6516.   Decided May 4, 1943.   (136 P. 2d 945.)

C. *Vernon Langlois,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Deputy Atty. Gen., for defendants.

MOFFAT, Justice.

The cause comes to this court for review upon certiorari to the Industrial Commission. The only question is whether the Overman Mattress Company had a sufficient number of employees to bring the matter within the statute. To bring an employer under the Workmen's Compensation Act, it is essential to show that the employer had in service three or more employees, workmen or operatives regularly employed. Sec. 42—1—40, U. C. A. 1943; *Palle* v. *Industrial Commission,* 79 Utah 47, 7 P. 2d 284, 81 A. L. R. 1222.

Personal injury by accident arising out of or in the course of employment suffered by James McGee is conceded and found by the Commission. There are no differences about

the weekly wage or the disability. Plaintiffs say there is no evidence to support the finding that the

"so-called partnership * * * was not at the time of the injury a bona fide partnership, but that it was a pure subterfuge designed to evade liability under the Workmen's Compensation Act; and that defendant [plaintiffs here] did have in service three or more employees in the business on December 12, 1941."

The evidence names six persons. They are: C. E. Overman, A. E. Overman, Verl Peay, Orin Conrad, June Morrison and James McGee.

June Morrison, under a written contract, had agreed to set up a set of books for the Overman Mattress Company for the sum of $80. The agreement is dated October 13, 1941. No time is specified within which the work should be completed. She was not required to do any of the work at the plant, nor be there at any time or at all. It was a contract for an independent service for an independent piece of work, free from control of the Company. When the set of books was set up and she was paid, that was the end of the matter. June Morrison must be eliminated as an employee. This leaves five persons involved.

In one part of McGee's testimony, he says that at the time he was working there were besides himself "A boy by the name of Earl Peay and Mr. Overman's brother Conrad." Later he said he did not know when Orin Conrad came down from Ogden or when he went back, or whether he received any pay, and he does not mention any work Orin Conrad did. In the face of this, C. E. Overman testified that Orin Conrad was a visitor at his home for about a week, that he was never hired and never received any pay. Orin Conrad says he was never employed by the Overman Mattress Company, but was employed in Ogden and came to Salt Lake City merely on a visit. This would appear to eliminate Orin Conrad and leave only four persons for consideration. Let us proceed to the determination of the re-

lationship of the other four. McGee is concededly an employee. This leaves then the two Overmans and Peay.

All the evidence is that the two Overmans and Peay were operating the business as a partnership. The Commission does not find otherwise, but for some reason which we cannot find in the record thought the organization or business was not "a bona fide partnership."

We quote the following from the case of *Wherritt* v. *Industrial Commission,* 100 Utah 68, 110 P. 2d 374, 376:

> "The fact finder is not always required to believe the uncontradicted evidence of a witness. *Gagos* v. *Industrial Comm.,* 87 Utah 101, 48 P. 2d 449, nor is it bound to adopt the theory of applicant for which there may be supporting evidence or inference. *Sugar* v. *Industrial Comm.,* 94 Utah 56, 75 P. 2d 311.
>
> " 'The duties of this court are limited to a determination of questions of law. We may interfere with the commission's findings of fact * * * where an award is denied against uncontradicted evidence without any reasonable basis for disbelieving the same. In such cases a question of law is presented for determination; otherwise, the findings of the commission must be affirmed.' *Russell* v. *Industrial Comm.,* 86 Utah 306, 43 P. 2d 1069, 1072.
>
> "In *Norris* v. *Industrial Comm.,* 90 Utah 256, 61 P. 2d 413, 415, we said:
>
> " 'Where the matter presented on appeal is the question of whether the commission should have in law arrived at a conclusion of fact different from that at which it did arrive from the evidence, a question of law is presented only when it is claimed that the commission could only arrive at one conclusion from the evidence, and that it found contrary to that inevitable conclusion.' "

However, in the instant case the evidence as to the partnership is uncontradicted and all one way. These three individuals, C. E. and A. E. Overman and Verl Peay, were engaged in a joint enterprise for profit in which they shared the profits and losses. When there were sufficient profits they shared them on the basis of $17.50 a week to each of them. When the earnings were not sufficient they stood the losses by at times being re-

quired to reduce their weekly stipend to as small an amount as $12 a week.

The fact that one of the members was taken into the partnership as a method of relieving the business from compensation liability under the Workmen's Compensation Act, if such be the fact, perpetrates no fraud per se and was a method of cutting expenses of a business running close to the line of profit and loss.

There were not three employees engaged in the operation of the business. The award of the Commission is set aside.

LARSON and WADE, JJ., concur.

WOLFE, Chief Justice (dissenting).

The only question raised by this appeal is, as pointed out by Mr. Justice MOFFAT, whether or not the Overman Mattress Company had three employees at the time the applicant was injured. Of the six persons mentioned in the evidence, the status of four is not in dispute. The two Overmans were the owners of the business which was operated under a partnership agreement. June Morrison was an independent contractor who was paid a flat sum to set up a bookkeeping system. McGee, the applicant, was an employee. This leaves in dispute the status of Orin Conrad and Verl Peay. Unless both were employees, the award of the Commission would have to be reversed.

Only two witnesses appeared before the Industrial Commission at the hearing, to wit: C. E. Overman and the applicant, James McGee. Mr. Justice MOFFAT in his opinion states that McGee testified that "he did not know when Orin Conrad came down from Ogden or when he went back, or whether he received any pay, and does not mention any work Orin Conrad did." This hardly represents a fair reflection of McGee's testimony in this regard. True, he did state that "I don't know the exact dates" when Conrad came down from Ogden or when he went back, but he did testify that "He [Conrad] had been there about a month or six weeks" at the time of this accident. In response to

a question asking if he knew whether or not Conrad was receiving any pay, the applicant answered: "He was receiving board and room and some expense money, because he told me he got so much to go to shows with." It does not appear that the testimony that Conrad was receiving board and room was based on hearsay, although the fact that he was receiving expense money does so appear. The record discloses that Conrad was 16 years old and had previously worked as a bootblack, so that it would not seem unreasonable that he would work for room and board and expense money. No questions were asked to determine whether or not McGee knew of any particular work that Conrad had done.

In answer to this testimony, C. E. Overman testified that Conrad was a visitor at the Overman home, that he was a relative and was never hired and that he never received any pay. Overman also testified that Conrad was only there for about one week. In weighing the evidence against the applicant, Mr. Justice MOFFAT also states that "Orin Conrad says he was never employed by the Overman Mattress Company, but was employed in Ogden and came to Salt Lake City merely on a visit." But Conrad did not appear before the Commission. The only thing in the entire record purporting to come from Conrad himself is an affidavit filed in support of a petition for rehearing. The affidavit was not even taken until some 15 days after the Commission handed down its decision. To treat this affidavit, which was only before the Commission on a petition for rehearing, as evidence which could be weighed against the testimony of McGee is clearly erroneous. Not only was there no opportunity to cross-examine Conrad, but the affidavit itself was not before the Commission at the time it made its decision. The consideration of this affidavit must be confined to the question as to whether or not the Commission abused its discretion in refusing to grant a rehearing. Since in the case of *Peterson* v. *Industrial Comm.*, 102 Utah 175, 129 P. 2d 563, I stated that I did not think the

Commission could consider as evidence an affidavit which was filed before the entry of the award, a fortiori I do not think we can treat as evidence an affidavit which the Commission had no opportunity to consider except on petittion for rehearing.

If I am correct in my contention that the affidavit of Orin Conrad and the several other affidavits filed under the same circumstances could not be treated as evidence to contradict the testimony of McGee. We then have only the evidence of McGee and Overman to consider in determining whether or not the evidence will uphold the Commission's award. Certainly the Commission would have been entitled to believe McGee's testimony that Conrad worked there, that he had been there a month or six weeks, and that he was there at the time of the accident. It also could disbelieve Overman's testimony that Conrad was only there one week as a visitor, that he did no work, and received no pay. There might be some question as to whether or not the testimony of McGee, if all of it, were taken as true, would make out a prima facie case for recovery. But I submit that in these cases the proof of status of other co-workers, must prima facie depend upon conclusion evidence and hearsay. The employee has no other source of information upon which he can draw to prove that a co-worker is an employee. When McGee was asked who was working there at the time of the accident, he answered that Verl Peay, Conrad and himself were there. I am inclined to believe that this testimony taken with the rest of McGee's testimony set out above was sufficient to make out a prima facie case which put the burden of going forward on the employer.

The main defense urged by the employer was that Verl Peay, the third so-called employee, was in fact a partner and not an employee. The Commission found that

"the so-called partnership alleged to have existed since October 1, 1941, was not at the time of the injury a bona fide partnership, but that it was a pure subterfuge designed to evade liability under the

Workmen's Compensation Act; and that the defendant did have in service three or more employees in the same business on Dec. 12, 1941."

Mr. Justice MOFFAT holds that the uncontradicted evidence shows that Peay was a partner and that there is, therefore, no evidence to support the Commission's finding in this regard. However, in *Norris* v. *Industrial Comm.*, 90 Utah 256, 61 P. 2d 413, 415, in considering those situations where the Commission found against uncontradicted testimony, we said:

"But in order to reverse the commission in this regard it must appear at least that (a) the evidence is uncontradicted, and (b) there is nothing in the record which is intrinsically discrediting to the uncontradicted testimony and (c) that the uncontradicted evidence is not wholly that of interested witnesses or, if the uncontradicted evidence is wholly or partly from others than interested witnesses, that the record shows no bias or prejudice on the part of such other witnesses, and (d) the uncontradicted evidence is such as to carry a measure of conviction to the reasonable mind and sustain the burden of proof, and (e) precludes any other explanation or hypothesis as being more or equally as reasonable, and (f) there is nothing in the record which would indicate that the presence of the witnesses gave the commission such an advantage over the court in aid to its conclusions that the conclusions should for that reason not be disturbed."

This rule was quoted with approval in the case of *Gerber* v. *Industrial Comm.*, 91 Utah 479, 64 P. 2d 1281. See also *Gagos* v. *Industrial Comm.*, 87 Utah 101, 48 P. 2d 449; *Kent* v. *Industrial Comm.*, 89 Utah 381, 57 P. 2d 724; *Wherritt* v. *Industrial Comm.*, 100 Utah 68, 110 P. 2d 374; *Peterson* v. *Industrial Comm.*, 102 Utah 175, 129 P. 2d 563. From these recent authorities we must conclude that the Commission need not believe the uncontradicted testimony of a witness in all cases. There may be infirmities not revealed by the record which caused the evidence to fail to carry conviction of its truth to the Commission, and be intrinsically discrediting. Hence, if there is a reasonable basis for disbelieving the uncontradicted testimony of Overman in the instant case, we should not reverse the award of the Commission.

The only evidence relating to Verl Peay's status as a partner is the testimony of C. E. Overman. Several other persons filed affidavits in support of a petition for rehearing which affidavits relate to Peay's status, but as already pointed out in this opinion, such affidavits can only be considered in determining whether or not the Commission should have granted a rehearing. Overman testified that Peay was a member of the partnership and not an employee. Upon further questioning by Commissioner Weisley, Overman admitted that Peay had contributed no property to the company; that though the company was liable under various contracts, Peay never signed any of them nor did his name appear anywhere on the parnership papers. He further testified that the partnership was buying the building in which the business was operated but that Peay's name did not appear in this transaction nor had he by writing assumed any of these obligations. The business was started in 1936 by C. E. Overman. In 1938 he took his brother in as a partner and they jointly executed contracts for purchase of certain machinery. Money was borrowed from a bank in Evanston, Wyoming, on the trucks operated by the company. But nowhere does Peay's name come into any of these transactions nor does it appear that he entered into any written agreement whereby he was to assume any of these liabilities.

Overman expressly stated that Peay was taken in for the purpose of avoiding the compensation laws. The motive for organizing a parnership should, as Mr. Justice MOFFAT points out, make no difference if a partnership were in fact organized. However, we should more closely scrutinize the evidence adduced to establish the existence of a parnership when it clearly appears that the alleged organization was for the purpose of avoiding liability under the compensation laws.

In addition to the matters set out above, the uncontradicted evidence referred to by Mr. Justice MOFFATT is wholly that of an interested witness. The Commission had

Overman before it and was able to see his reaction to the questions and would be in a better position to ascertain whether or not he was telling the truth. McGee testified that Peay received his pay check every week from the book-keeper who came out and paid McGee and Peay at the same time and in the same way. McGee, who had worked there for at least seven months, apparently did not know that Peay claimed to be a partner.

Under the evidence and these circumstances I believe that the Commission did have a reasonable basis for dis-believing the uncontradicted evidence and in finding that there were three employees at the time of the accident, and that under the record as it was constituted at the time of the award this court which has the right to weigh the evidence as to jurisdictional facts should so find from the evidence. I, therefore, believe that the award of the Commission should be affirmed.

McDONOUGH, Justice (dissenting).

I concur in the views expressed in the dissenting opinion of Mr. Chief Justice WOLFE.