382 P.2d 207

**Albert SHELTON, Plaintiff,**

v.

**INDUSTRIAL COMMISSION of Utah, R & R Well Service Company and United States Fidelity & Guaranty Company, Defendants.**

No. 9828.

Supreme Court of Utah.

June 5, 1963.

---

Clyde, Mecham & Pratt, Frank J. Allen, Salt Lake City, for plaintiff.

A. Pratt Kesler, Atty. Gen., Skeen, Worsley, Snow & Christensen, Salt Lake City, for defendants.

HENRIOD, Chief Justice.

Review of an Industrial Commission's denial of an award for injuries. Affirmed, with no costs.

Mr. Shelton, applicant, concededly was injured while working on an oil drilling operation. A steel rod swinging pendulum-like, struck him on the left temple. He continued working, but suffered headaches. About 2½ months later a physician removed liquid from a capsule near the brain and at the site of the injury. On advice, he did not work for a month. He then resumed work, but 6 months later surgery revealed a cancerous condition at or near the spot where the rod had struck him.

Pivotal point of this case is whether the blow 1) caused or 2) aggravated a cancer. The Commission concluded that it did not.

A panel of three medical specialists concluded that the blow was not the cause of either and that it felt that "this particular brain tumor may well have been present prior to the injury." The nub of this case seems to revolve around the panel's statement that "The panel considered the aspects of trauma in relationship to brain tumor and unanimously feel that there is no good

medical proof that trauma produces brain tumors."

The applicant urges that this statement indicated that the panel did not consider the facts of the case but simply stated a medical conclusion not shared by other medical schools of thought. Counsel concluded in his brief that since the Commission upheld the panel report, "This proceeding is in fact a review of a determination by the Industrial Commission that no causal relationship between trauma and brain tumors will be recognized in Utah for the purposes of the Compensation Acts." We do not share such a conclusion and believe that relying on the quoted statement, out of context with the other portions of the panel report, is to ignore the gist and substance thereof. The panel also stated that *"the* brain tumor [1] is not the result of or aggravated by the traumatic industrial injury" and that "It was further felt by the panel that *this particular brain tumor may* well have been present prior to the injury."

The applicant's attending physician testified that in his opinion it was possible or quite probable that there was a causal connection between the trauma and subsequent development of the tumor, conceding however, that there were two schools of thought on the matter,—diametrically opposed, each

being supported by eminent medical authorities, some of which he quoted. He conceded further that he could not determine if the cancer existed prior to the trauma. There was no evidence that it did. There was testimony that a cancer might develop where there was trauma accompanied by bleeding, but the physician found no evidence of that fact.

One of the doctors on the panel also agreed there were two schools of thought on the subject, equally persuasive and authoritative. There was a direct conflict as to whether the tumor could have developed within the time it did in this case, and there were other, perhaps minor, matters of controversion. The fact finder chose to believe the panel report after reviewing the written record and the oral testimony. The Commission upheld him, and we uphold the Commission order denying an award, on principles heretofore enunciated by this Court.

Counsel for the applicant points to Ewell v. Industrial Commission [2] as authority that there is a "disposition on the part of the Utah Court to reverse the Commission when it has resolved doubts against an employee." This is somewhat of a distortion of that case which determined only that the Commission's order arbitrarily flew in the teeth of the *uncontroverted* facts, and

---

1. Obviously referring to Shelton's brain tumor.

2. 120 Utah 671, 238 P.2d 414 (1951).

wherein we pointed out that it "was not shielded by the decisions of this court rendering inviolate the Commission's findings on *conflicting* evidence."

Counsel points to Utah Fuel Co. v. Industrial Commission[3] and Salt Lake City v. Industrial Commission[4] as authority for the proposition that trauma and cancer may have a causal connection, concluding that because no award was made here, the Commission in futuro will not recognize any such relationship. This is a non sequitur. In those cases, which admittedly were close ones, based in goodly part on conflicting medical testimony as to such relationship, we simply *affirmed* the Commission on findings we could not disturb unless shown to be arbitrary,—which was not the case. We believe the instant case is similar and a very close one,—one in which this Court would have had to affirm the Commission had it gone the other way. There is no reflection of caprice on the part of the Commission here, and consequently, on principles so oft-repeated as to require no citation of authority, it is our duty to sustain the Commission.

We cannot share the applicant's conclusion that the instant case announces that in the future any different policy or attitude toward compensability based on choice of one controversial medical dogma in preference to another will prevail. This case reflects no anticipatory denial of compensation based on preference of medical texts. Contrariwise, it is assumed that it will base its orders on facts, right or wrong, as has been its wont in the past. When and if such attitude presents itself this Court will reward the Commission with reversal.

McDONOUGH, CALLISTER, CROCKETT and WADE, JJ., concur.

3.  102 Utah 26, 126 P.2d 1070 (1942).

4.  104 Utah 436, 140 P.2d 644 (1943).